**SCHNADER HARRISON SEGAL & LEWIS** LLP
**LISA J. RODRIGUEZ**
**New Jersey Managing Partner**
**Woodland Falls Corporate Park**
**220 Lake Drive East, Suite 200**
**Cherry Hill, New Jersey  08002-1165**
**Phone: (856) 482-5741 ▪ Fax: (856) 482-2578**

*Attorney for Plaintiff and the Class*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY ORTIZ, on behalf of herself and all other similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> PATRICK J. CALLAHAN, in his capacity as Superintendent of New Jersey State Police; GURBIR S. GREWAL, in his capacity as Attorney General of the State of New Jersey; VERONICA ALLENDE, in her official capacity as Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice; and MARC DENNIS, individually and in his capacity as Coordinator in the New Jersey State Police Alcohol Drug Testing Unit, <br><br> *Defendants.* | Civil Action No. |

### CLASS ACTION COMPLAINT

Plaintiff, Ashley Ortiz, brings these claims against Patrick J. Callahan, Gurbir S. Grewal, Veronica Allende and Marc Dennis (collectively "Defendants") on behalf of herself and all those similarly situated.

## NATURE OF THE SUIT

1.      This is a class action brought pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, seeking monetary damages and injunctive relief for violations of the clearly established constitutional rights of Plaintiff and others situated similarly.  As Plaintiff alleges more fully below, Defendants violated Plaintiff's due process rights, and the due process rights of others situated similarly, by fabricating evidence relating to the calibration, recalibration, accuracy, and/or certification of Alcotest 7110 MKIII-C instruments used by the State of New Jersey to determine the blood alcohol concentration ("BAC") of people suspected of driving while intoxicated ("DWI") in violation of N.J. Stat. § 39:4-50; relying on this falsified evidence to initiate criminal prosecutions against Plaintiff, and others situated similarly; failing to disclose this exculpatory evidence either during the pendency of Plaintiff's DWI prosecutions or in the aftermath of those prosecutions; presenting this falsified evidence to New Jersey courts and using it to obtain DWI convictions and/or guilty plea agreements; and by failing to train, supervise, or discipline officers assigned to coordinate alcohol testing and recalibrate Alcotest instruments in such a manner that would prevent these egregious constitutional violations.

2.      When the fact of the Defendants' fabricated evidence and Defendants' reliance upon that evidence to obtain DWI convictions came to light, Defendants denied Plaintiff and others similarly situated of the opportunity to seek post-conviction relief to challenge the convictions obtained on the basis of inadmissible, tainted evidence.  Rather, at the direction of the Defendants, Plaintiff's post-conviction relief petition and the petitions of those similarly situated, went unaddressed as the municipalities refused to address the issues raised in the post-conviction relief petitions.  Instead, the municipalities in which they were filed simply chose to ignore the properly filed petitions.

3.      Plaintiff Ortiz initially sought relief against Defendants for relying on fabricated evidence relating to the calibration, recalibration accuracy, and/or certification of Alcotest 7110 MKIII-C when it charged her with DWI, more than 4 years ago.  Plaintiff Ortiz filed a 42 U.S.C. § 1983 complaint on October 16, 2016.  Defendants moved to dismiss that complaint on January 18, 2017, claiming inter alia, that the court lacked subject matter jurisdiction pursuant to *Heck v. Humphrey*, 512 U.S. 474 (1994), because Plaintiff Ortiz had not sought post-conviction relief prior to filing its Section 1983 complaint.

4.      On August 25, 2017, the court issued an opinion and order granting Defendants' motion and dismissed the complaint, without prejudice, finding it did not have subject matter jurisdiction citing, *Heck v Humphrey* for the requirement that Ms. Ortiz must first seek post-conviction relief to have her conviction set aside.  (Ex. A.)  In dismissing the Complaint without prejudice, the court recognized that: "[a]lthough the Court lacks subject matter jurisdiction over Plaintiff's' claims at this time, the Court dismisses the Complaint without prejudice, as Plaintiff's claims may be viable if she invalidates her conviction through proper avenues for relief".  *See*, Order.  (Ex. B.)

5.      Plaintiff Ortiz appealed that Opinion and Order.  On September 6, 2018, the Third Circuit affirmed the District Court's dismissal without prejudice, agreeing with the trial court that Plaintiff must first seek post-conviction relief to set aside her conviction.  (Ex. C. Opinion and Order)

6.      On May 4, 2018, after oral argument before the Third Circuit, but before the Court rendered its opinion and order, a Special Master appointed by the New Jersey Supreme Court issued a Report of Findings of Fact and Conclusions of Remand Court.  (Ex. D.)  The Report concluded that:

> The State has failed to clearly and convincingly prove that failure to perform the NIST thermometer step in the calibration process does not undermine and call into question the good working order of the Alcotest instrument. Skipping the NIST thermometer step removes from the process a substantial and essential safeguard, the magnitude of which reduces the reliability of the device to a level that is less than sufficiently scientifically reliable to allow its reports to be admitted into evidence.

Report at 197-198.

7.      Following the Special Master's Report, on November 13, 2018, the New Jersey Supreme Court issued a decision in *State v. Cassidy*, 235 N.J. 482 (2018), which held that Alcotest results from machines calibrated without using a thermometer that produces NIST – traceable temperature readings in the calibration process are inadmissible as evidence. (Ex. E.)

8.      In an Order dated January 29, 2019, the New Jersey Supreme Court directed the Administrative Office of the Courts to determine how to handle cases affected by the Court's decision in *Cassidy*. The same Order appointed a special master with judicial authority to make judicial and administrative decisions relating to adjudicated cases in which evidential usage of Alcotest machines were calibrated without using a NIST traceable thermometer. (Ex. F.)

9.      On December 18, 2019 the New Jersey Supreme Court issued another *Cassidy* related Order, which supplemented and relaxed New Jersey Municipal Court rules to permit plea agreements in post-conviction relief cases affected by the Court's decision in *State v. Cassidy*. (Ex. G.)

10.      Following the Third Circuit's dismissal without prejudice, Plaintiff, through her counsel, filed a motion for post-conviction relief on April 8, 2019. In the two years that the motion has been pending, the Defendants have taken no actions to address Plaintiff's petition, or the petitions of those similarly situated despite the New Jersey Supreme Court's direction that they do so.

11.     Plaintiff, through her counsel, has repeatedly followed up on the status of her petition for post-conviction.  (*See e.g.* Ex. H).  Despite the directives of the New Jersey Supreme Court that effected municipalities address those petitions for post-conviction relief that resulted from plea agreements that relied upon the inadmissible evidence from Alcotest machines calibrated without using NIST traceable thermometers, the municipalities, including Wall Township, have failed and refused to rule on the pending post-conviction relief petitions.

12.     Plaintiff, Ashley Ortiz, is an individual citizen of the State of New Jersey, residing in Ocean County.

13.     Defendant, Patrick J. Callahan is the current Superintendent of the New Jersey State Police ("NJSP.")  He replaced Joseph Fuentes who was the superintendent at the time the Alcotest results were falsified.  He is sued in his official capacity for injunctive relief.

14.     Defendant, Gurbir S. Grewal is the Attorney General of the State of New Jersey. He is sued in his official capacity for injunctive relief.

15.     Defendant, Veronica Allende is Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice.  She is sued in her official capacity for injunctive relief.

16.     Defendant, Marc Dennis was at all relevant times a Sergeant in the NJSP and a Coordinator of the NJSP's Alcohol Drug Testing Unit ("ADTU").  He is sued in his individual capacity and in his official capacity as ADTU Coordinator.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Defendants do business in this District, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTS

### NEW JERSEY'S PROHIBITION ON DRIVING WHILE INTOXICATED

19.     Under New Jersey law, driving while intoxicated ("DWI") is a criminal offense. *See* N.J. Stat. § 39:4-50.

20.     New Jersey determines whether a person is or is not legally "intoxicated" or "under the influence of intoxicating liquor" by assessing the suspected driver's blood alcohol concentration ("BAC").

21.     Operating a motor vehicle with a BAC of 0.08% or higher constitutes a DWI under New Jersey law.   In some instances, driving with a BAC below 0.08% constitutes a punishable offense:  Drivers under the age of twenty-one with BAC readings higher than 0.01% and drivers of commercial vehicles with BAC readings higher than 0.04% are subject to DWI penalties.

22.     Drivers convicted of DWI are subject to criminal and civil penalties.   These penalties may include fines, fees, surcharges, temporary or indefinite suspension of driving privileges (*i.e.*, license loss), community service, mandatory ignition interlock, mandatory referral to the Intoxicated Driver Resource Center, and/or a term of imprisonment.

23.     Applicable penalties vary depending, in part, on the driver's BAC.  For instance, individuals with a BAC of 0.10% or higher are subject to more heightened penalties than a driver with BAC results ranging between 0.08% and 0.10%.   The existence of any prior DWI conviction similarly results in increased punishment.

PHDATA 7707417_1

24.    In addition to those penalties, DWI charges remain on a driver's driving record, which often negatively affects the driver's insurance rates and options, and criminal record, which often negatively affects the driver's employment opportunities.  A DWI conviction may also affect your ability to travel to Canada as a visitor.  Social stigma is also often cast upon those charged with DWI.

25.    Refusal to submit to a breath test is also a criminal offense under New Jersey law. *See* N.J. Stat. § 39:4-50.2.

26.    Due to the State's objective, bright-line definition of DWI, which depends almost entirely on the BAC result of an individual suspected of DWI, the outcome of most DWI prosecutions hinges two things:  (1) whether the suspect's BAC result exceeds the legal limit; and (2) whether the suspect's BAC result is admissible in court.

27.    Indeed, if a suspect's BAC result exceeds the DWI threshold and is admissible in court, and the suspect proceeds to trial, the proceedings almost always result in a conviction.  On the other hand, judicial exclusion of a BAC result often results in a dismissal of DWI charges.

28.    Given this reality, many DWI suspects who have submitted to breath tests and have received BAC results exceeding the legal limit feel that they have little choice but to plead guilty—largely due to the unrebuttable presumption that Alcotest instruments use by the police are indisputably accurate and that State officers have followed the necessary and legally required procedures to ensure their accuracy.  Unfortunately, this case calls into question the accuracy of both those assumptions.

PHDATA 7707417_1

## ALCOTEST AND NEW JERSEY'S COURT-APPROVED
## ALCOHOL-TESTING PROCEDURE

29.     To test the BAC of individuals suspected of DWI, New Jersey mandates the use of an instrument or machine, manufactured by Draeger Safety Diagnostics, Inc. ("Draeger"), called the "Alcotest 7110 MKIII-C" (hereinafter, "Alcotest instrument").

30.     In January 2005, police departments in Middlesex County began using the Alcotest instrument; by December 2005, thirteen Counties employed the instrument for evidential breath testing.  As of 2007, New Jersey, its Counties, and its municipalities had purchased nearly 500 Alcotest instruments.  *See State v. Chun*, 2007 N.J. LEXIS 39, at *34-*35 (N.J. 2007); *State v. Chun*, 943 A.2d 114 (N.J. 2008).

31.     The New Jersey Supreme Court has approved the State's use of the Alcotest instrument for breath-testing purposes, concluding that Alcotest results are scientifically reliable and admissible evidence in DWI prosecutions.  *See State v. Chun*, 943 A.2d 114 (N.J. 2008).

32.     Alcotest instruments are used statewide, by both the NJSP and local police departments, to determine the BAC results of DWI suspects.

33.     The Alcotest instrument measures a suspect's BAC based on two separate evidential breath samples taken from the suspect.

34.     In sum, the Alcotest instrument tests each sample separately in the instrument's two testing chambers, each of which employs a separate testing technology.  *State v. Chun*, 2007 N.J. LEXIS 39, at *26-*38 (N.J. 2007) (explaining technical details regarding the Alcotest instrument); *State v. Foley*, 851 A.2d 123 (N.J. Super. 2003).  The first chamber determines the suspect's BAC by way of an electrochemical analysis, resulting in an electrochemical BAC result.  After the Alcotest instrument determines the suspect's electrochemical result, the breath

sample passes through to the second chamber, where it is tested using an infrared spectroscopy analysis, resulting in an infrared BAC reading.

35.     Once the instrument derives an electrochemical and infrared result for the suspect's first evidential breath sample, the machine releases that sample in preparation for the second evidential breath sample, which is then tested in both chambers of the instrument.

36.     In the end, the Alcotest instrument produces four separate BAC results—*i.e.*, two electrochemical results and two infrared results.  The lowest of the four reading within the acceptable tolerance range constitutes the final BAC test result.

37.     Because the State of New Jersey uses each Alcotest instrument to analyze countless evidential breath samples, an initial calibration and subsequent recalibrations of the instrument are essential to obtaining accurate BAC results and maintaining the integrity of the underlying testing process.

38.     The NJSP has a special unit—the Alcohol Drug Testing Unit ("ADTU")—tasked with conducting Alcotest inspections for law enforcement agencies throughout the State, calibrating and recalibrating Alcotest instruments used throughout the State, and preparing supporting documents and certifications related to the instruments.  These tasks are primarily performed by ADTU Coordinators.

39.     New Jersey's alcohol-testing regime places considerable authority and discretion in the hands of the ADTU Coordinators, especially with respect to safeguarding the integrity, accuracy, and functionality of the Alcotest instruments.

40.     After Draeger delivers the Alcotest instruments to police departments throughout the State, but before the instruments are placed into service, an ADTU Coordinator must perform

an additional calibration to ensure their accuracy and certify that the calibration was performed correctly.

41.     A Special Master appointed by the New Jersey Supreme Court has accurately described part of the initial calibration process as follows:

> Calibration of the Alcotest 7110 involves a wet bath simulator, the Draeger CU34, and one bottle of 0.10 ethanol alcohol solution. The ethanol alcohol solution is poured into the simulator jar where it is heated to 34 plus or minus 0.2 degrees C. A NIST-traceable temperature probe monitors the temperature of the simulator solution. NIST refers to the National Institute of Standards and Technology, which is responsible for establishing, maintaining and publishing basic standards of measurement consistent with their international counterparts.  Each temperature probe has a probe value, which can be changed only by a coordinator using the "black-key" function. When the instrument determines that the simulator has reached the correct temperature, the coordinator hooks up the simulator to the back of the instrument through the rear port of the cuvette. The coordinator then hits the escape key, the function appears on the display screen, the coordinator types in calibrate, and follows the instrument's prompts.

*State v. Chun*, 2007 N.J. LEXIS 39, at *44-*45 (N.J. 2007).

42.     As the foregoing clarifies, testing the temperature of the simulator solution with a NIST-traceable thermometer is a crucial step in the calibration (and recalibration) process that was established by the Chief Forensic Scientist of the NJSP and adopted by the New Jersey Supreme Court.

43.     Indeed, scientific research suggests that the approximate temperature of exhaled breath is between 34 and 35 degrees Celsius.  Where simulator solution in an Alcotest instrument exceeds those temperatures, the instrument is susceptible to producing BAC results that exceed the actual BAC of the person who provided the evidential breath sample.

44.     Testing the temperature of the simulator solution used in the Alcotest instrument with an NIST-traceable thermometer is thus a necessary step for ensuring the accuracy of statewide BAC results and reducing the margin of error of Alcotest instruments.

45.     The importance of these safeguards is evidenced by the New Jersey Administrative Code, which mandates the use of certification, training, and calibration procedures in association with chemical breath testing.  *See* N.J.A.C. 13:51.  These procedures, which (as the foregoing allegations demonstrate) are not always followed, were designed to ensure the integrity of breath testing and to preserve the integrity and objectivity of the testing processes as a whole.

46.     Given the importance of the recalibration process, an ADTU Coordinator is required to recalibrate the Alcotest instrument every six months—or, if the Coordinator finds it to be necessary, more frequently.  In fact, despite that Draeger initially recommended annual recalibration, the New Jersey Supreme Court has ordered the State to inspect and recalibrate all Alcotest instruments every six months.  *State v. Chun*, 943 A.2d 114, 173 (N.J. 2008).

47.     The Chief Forensic Scientist of the Division of State Police has established a "Calibration Check Procedure" for Alcotest instruments used in the State, which ADTU Coordinators are required to complete, further demonstrating the importance of calibration and recalibration of Alcotest instruments.

48.     The Calibration Procedure requires, among other things, the ADTU Coordinator tasked with calibrating or recalibrating the instrument to complete a certification that he or she did in fact perform the Calibration Check on the Alcotest instrument and the certification is truthful.  *See* N.J.A.C. § 13:51-1.3 (certification requirement).

11

49.     An ADTU Coordinator's failure to strictly adhere to these procedures when calibrating or recalibrating an Alcotest instrument calls into question the accuracy, integrity, and validity of all BAC readings subsequently produced by that instrument.

50.     Although a Special Master to the New Jersey Supreme Court previously explained that "[t]he objectivity of the Alcotest 7110 compared to the breathalyzer is a considerable advantage" in that "it combines both accuracy, contemporary documentation of the result, and elimination of the ability of the operator to falsify or exaggerate the test outcome," these observations were premised on the assumption that all ADTU Coordinators tasked with calibrating and recalibrating the Alcotest instruments would follow the detailed calibration, recalibration, and certification procedures mandated by Draeger, the New Jersey Legislature, and the Court itself.

### RECENT HISTORY OF FABRICATING DRUG AND ALCOHOL TESTING RESULTS IN NEW JERSEY

51.     Unfortunately, that seemingly rational assumption about the integrity and honest of all ADTU Coordinators has proved erroneous:  For an extended period of time, Defendant Dennis—an ADTU Coordinator—willfully, intentionally, and repeatedly failed to comply with these procedural safeguards, despite repeatedly certifying falsely that he had done so.

52.     Defendant Dennis was employed by New Jersey as an ADTU Coordinator for over seven years and certified that he properly calibrated and recalibrated countless Alcotest instruments during his tenure.

53.     On September 19, 2016, Elie Honig, in his official capacity as Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice, sent a letter to the Honorable Glenn Grant, J.A.D, the Acting Administrative Director of the New Jersey Courts, acknowledging that the Attorney General's Office had filed a criminal

PHDATA 7707417_1

complaint against Defendant Dennis for falsely certifying that he had properly performed a calibration check on various Alcotest instruments. *See* (Ex. I.)

54.     The letter explains that, while acting in his official capacity as an ADTU Coordinator, Defendant Dennis did not use an NIST-traceable digital thermometer to test the temperature of the simulator solutions prior starting the Alcotest calibration process, as required by the procedure established by the Chief Forensic Scientist of the NJSP and approved by the New Jersey Supreme Court in *Chun*.

55.     Despite deliberately omitting this crucial step in the calibration process, Defendant Dennis certified falsely that he had "performed a calibration check on the approved instrument" identified on this certification.

56.     In fact, the State has admitted that Defendant Dennis issued false certifications regarding at least three Alcotest instruments, resulting in the instruments being used to obtain BAC readings.

57.     In light of these repeated failures to comply with legally required breath-testing safeguards, it is possible—indeed, probable—that Defendant Dennis also failed to comply with other required portions of the Alcotest calibration process; failed to properly calibrate or recalibrate more than the three Alcotest instruments mentioned by the State; and submitted more than three false Alcotest Calibration certifications in connection with DWI prosecutions.

58.     This is supported by the fact that Defendant Dennis was employed by the NJSP as an ADTU Coordinator for more than seven years and has certified that he properly calibrated Alcotest instruments used to test evidential breath samples in at least Middlesex, Monmouth, Ocean, Somerset, and Union Counties.

59.     Even assuming Defendant Dennis provided false certifications for only three Alcotest instruments, the State has admitted that at least 20,667 individual provided evidential breath samples on those instruments alone.

60.     In addition, numerous DWI prosecutions have been initiated based on BAC readings obtained from Alcotest instruments that Defendant Dennis certified that he had properly calibrated or recalibrated.

61.     The New Jersey Supreme Court found:

> For decades, since the inception of breath testing in New Jersey, proof of the good working order of the device has been required as mandatory fundamental evidence.  That proof is established by the production of the coordinator's certification, attesting to the fact that he or she performed the calibration in accordance with all required procedures.  Failure to have actually performed the NIST traceable thermometer step in the procedure renders invalid a Certification that all steps were followed.

62.     The Court held that "skipping the NIST thermometer step removes from the process a substantial and essential safeguard, the magnitude of which reduces the reliability of the device to a level that is less than scientifically reliable to allow its reports to be admitted into evidence."

63.     As a result of the reliance on falsified certifications, Plaintiff and others situated similarly, now know the integrity of their convictions based on the State's Alcotest results, the have been compromised.

64.     Furthermore, despite knowing about Defendant Dennis's fabrication of evidence for a considerable (but currently unknown) period of time, Defendants or their predecessors deliberately withheld and/or failed to disclose this material, exculpatory evidence to Plaintiff, others situated similarly, and the attorneys of Plaintiff and others situated similarly, until September 19, 2016.

65.     This violation of their ongoing professional and ethical duty to disclose exculpatory evidence caused, and continues to cause, immense and immeasurable harm to Plaintiff, and others situated similarly.

66.     Even after it was well known that thousands of DWI convictions were obtained based on tainted Alcotest results, and after the New Jersey Supreme Court directed that there be a statewide effort to address those convictions based on tainted, inadmissible Alcotest results, there has been no effort to provide relief to Plaintiff and others similarly situated.  This includes the Defendants refusal to address properly filed petitions for post-conviction relief.

67.     The failure to provide post-conviction relief to address the compromised DWI convictions caused and continues to cause immense and immeasurable harm to Plaintiff and others similarly situated and continues to deprive them of certain due process rights.

68.     The New Jersey Supreme Court opined that the failure to properly certify the Alcotest undermines those DWI convictions which relied upon the Alcotest because the evidence was inadmissible. Accordingly, any conviction based on those inadmissible results are invalid. This finding satisfies the requirements of *Heck v Humphrey.*  Given the Supreme Court's findings, *Heck* cannot stand as a bar to the §1983 claims of Plaintiff and others similarly situated.

69.     Plaintiff and others similarly situated have also petitioned for post-conviction relief in light of the Supreme Court's findings, but those petitions have not been addressed in the more than two years in which they have been pending.

70.     Defendants have refused to address the petitions for post-conviction relief filed by Plaintiff and those similarly situated.  This refusal to consider the petitions for post-conviction relief further excuses the Plaintiff and those similarly situated from that *Heck* requirement.  The

Supreme Court has directed the Defendants to address those convictions based on tainted, inadmissible Alcotest results they have failed to do so.

71.     Further, this is not the first time Defendants have had to issue a letter notifying the courts, prosecutors, criminal defendants, and defense attorneys that scientific-testing evidence was fabricated by a forensic scientist employed by the NJSP.  Nor is it the first time that Defendants deliberately withheld information related to malfeasance related to scientific testing conducted by employees of the NJSP.

72.     On February 22, 2016, the Director of the New Jersey Division of Criminal Justice issued a letter to "All County Prosecutors" indicating that Kamalkant Shah, "a forensic scientist at the New Jersey State Police Office of Forensic Sciences, North Regional Laboratory – Drug Unit," failed to properly test drug evidence and falsely reported test results regarding that evidence.  *See* (Ex. J.)

73.     The State admitted that, in at least one case, Shah recorded "test results" for suspected marijuana that had never actually been tested—an unlawful practice commonly known as "dry labbing."

74.     A month later, the Director of the New Jersey Division of Criminal Justice issued a letter to Judge Grant and the Public Defender's office indicating that Shah acted as the primary lab examiner in nearly 8,000 drug prosecutions, including cases in Bergen, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Passaic, Somerset, Sussex, Union, and Warren Counties.  All such drug prosecutions have been called into question.

75.     Upon learning of Shah's fabrication of testing evidence, the State waited months before disclosing Shah's malfeasance to potentially affected individuals, as is likely the case here.  Indeed, State authorities have indicated that the NJSP discovered Shah's conduct on

December 10, 2015 and the NJSP suspended Shah without pay on January 12, 2016.  The State and Defendants nonetheless withheld this information from the public until February 22, 2016, thus suggesting the existence of an unlawful practice and/or policy of delaying public disclosure of fabricated evidence and NJSP misconduct for an unreasonable period of time.

76.     Although crime lab analysts—such as Defendant Dennis and Kamalkant Shah—are supposed to be neutral parties interested in only accurately testing evidential breath and drug samples, these incidents unfortunately serve to establish that it is not unheard of in New Jersey for such analysts to operate as members of the prosecution "team," thus resulting in a mass deprivation of due process rights of Plaintiff, and others situated similarly.

77.     These repeated failures indicate that the NJSP and Defendant Callahan has inadequately trained its ADTU Coordinators; supervised its ADTU Coordinators in a grossly negligent manner; and have approved practices that vest too much discretion and authority with ADTU Coordinators, with minimal oversight, thus resulting in the prosecution and conviction of potentially innocent DWI suspects based on false certifications and potentially inaccurate BAC results.

### PLAINTIFF WAS ARRESTED AND CHARGED WITH DWI BASED ON INADMISSIBLE ALCOTEST RESULTS THAT HAVE BEEN CALLED INTO QUESTION BY THE RECENT CHARGES AGAINST OF DEFENDANT DENNIS

78.     Plaintiff represents a class of similarly situated individuals who were prosecuted for DWI in New Jersey, based on evidential breath sample results taken from Alcotest instruments that were calibrated, recalibrated, or certified by Defendant Dennis during his lengthy tenure as an ADTU Coordinator.

79.     Ms. Ortiz was stopped on August 31, 2015 for having a light out on her license plate.

80.     While questioning Ms. Ortiz, the police officer detected the odor of alcohol and administered field sobriety testing.  Based on the results of that testing, the officer arrested Ms. Ortiz for DWI and transported her to the Wall Township Police Department where the Alcotest was administered.

81.     The results of the Alcotest provided that Ms. Ortiz had a blood alcohol content (BAC) of 0.09%.

82.     Ms. Ortiz sought counsel to represent her against the charges, including the DWI charges filed against her.  Her counsel was provided with information, including the Alcotest Calibration Record.  The Calibration Record supporting the results of Ms. Ortiz's BAC reading was certified by Sgt. Marc Dennis.  (Ex. K.)

83.     In reliance on her BAC reading, and the documentation supporting that reading, Ms. Ortiz pled guilty to DWI.  As a result of her guilty plea, Ms. Ortiz lost her driver's license for three (3) months and paid additional fees and surcharges, including insurance surcharges.

84.     Plaintiff, and those situated similarly, had no way of knowing before September 19, 2016 that their constitutional rights had been violated; that the accuracy of the Alcotest instruments used to test their evidential breath samples had been negatively affected by Defendant Dennis's improper recalibration of those instruments; or that they had a legitimate basis to exclude their BAC results as a result of Defendant Dennis's involvement in the Alcotest calibration process.

85.     Had Plaintiff and others situated similarly known of Defendant Dennis's involvement in the process used to obtain their BAC results, they would have sought and obtained suppression of the BAC result.

PHDATA 7707417_1

86.     Under New Jersey law, the State must "clearly establish" the following as a precondition for admissibility of Alcotest results:  (1) "the device was in working order *and had been inspected according to procedure*; (2) the operator was certified; and (3) the test *was administered according to official procedure.  State v. Chun*, 943 A.2d 114, 136, 162 (N.J. 2008).

87.     Under that standard, the Alcotest readings of Plaintiff's evidential breath samples—as well as the readings of others situated similarly—cannot possibly satisfy this standard for inadmissibility because the State has admitted that the legally required inspection and testing procedures were not followed by Defendant Dennis.

88.     Indeed, in its public letter to Judge Grant, the State conceded that "use of the NIST-traceable thermometer is *a required procedure* that was adopted" by the New Jersey Supreme Court in *Chun*, further acknowledging that the purpose of the step was "to confirm that the liquid simulator solutions are within the accepted temperature range before the coordinator initiates the actual calibration." (Emphasis added).

89.     For that reason, the New Jersey Supreme Court has ruled that "the most recent calibration report prior to a defendant's test" and "the credentials of the coordinator who performed the calibration" are "foundational" documents that must be entered into evidence in connection with an Alcotest reading.  *State v. Chun*, 943 A.2d 114, 136, 166-68, 172-74 (N.J. 2008).

90.     Following the Special Master's May 2018 Report, the Supreme Court ruled that:

> "Alcotest results from machines calibrated without using a thermometer that produces NIST – traceable temperature readings in the calibration process are inadmissible as evidence".

PHDATA 7707417_1

91.     Because Defendant Dennis fabricated the calibration reports for various Alcotest instruments, the State now lacks documents that are foundational prerequisites for introduction of any BAC result produced by an Alcotest instrument certified, calibrated, or recalibrated by Defendant Dennis.

92.     Worse still, unlike drug samples, which can be retested, evidential breath samples cannot be preserved or retested.  Accordingly, Plaintiff, and those situated similarly, are unable to disprove the accuracy of their BAC result, despite the fact that they were produced by Alcotest instruments that had not been properly calibrated and were supported by false calibration certifications.

93.     Having recognized that DWI convictions obtained based upon inadmissible evidence may be to be invalid, the Defendants were directed to establish a protocol for addressing those convicted based on the falsified results.  Defendants have failed to do so.

94.     As recognized in the Third Circuit opinion, Plaintiff and the Class could not have raised the issue of the invalidity of their conviction based on the state's reliance on falsified evidence, because the Defendants failed to disclose the falsification until September, 2016.  Once disclosed Defendants refused to provide post-conviction relief to Plaintiff and those similarly situated.

95.     The reliance on falsified evidence was so serious that it deprived Plaintiff and those similarly situated of a fair trial.  The failure to address the petitions of Plaintiff and those similarly situation is an independent and continuing violation of the due process rights of Plaintiff and those similarly situated.

**CLASS ALLEGATIONS**

96.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action on behalf of the following Class and Sub-class:

(a)      All persons who have been arrested in New Jersey from 2009 through at least September 19, 2016 and convicted of DWI based on an Alcotest certified by Officer Dennis;

(b)      Plaintiff also brings this action on behalf of a Sub-class who have filed a petition for post-conviction relief seeking to set aside the DWI conviction based on inadmissible Alcotest results and whose petitions have been refused consideration by Defendants.

97.      Members of the Class and Sub-Class are so numerous that joinder is impracticable.  Plaintiff believe there are thousands of class members.  In fact, one estimate put the number of class members in excess of 20,000.  Further, the Class is readily identified from information and records maintained by Defendants.

98.      Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class and Sub-class were damaged by the same wrongful conduct of Defendants.

99.      Plaintiff will fairly and adequately protect and represent the interests of the Class and Sub-class.  The interests of the Plaintiff are coincident with, and not antagonistic to, those of the Class and Sub-class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of class action litigation.

100.      Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members.  Questions of law and fact common to the Class include:

(a)      Whether Defendant Dennis failed to comply with legally mandated breath testing safeguards;

(b)      Whether Defendant Dennis issued false certifications;

21

(c)     Whether Defendants deliberately withheld and/or failed to disclose Defendant Dennis' failure to comply with legally mandated breath testing safeguards;

(d)     Whether Plaintiffs were improperly denied post-conviction process;

(e)     Whether Defendants' actions both in relying on falsified Alcotest results and in denying Plaintiff and the Class and Sub-class post-conviction relief violated Plaintiff's Due Process Rights pursuant to 42 U.S.C. § 1983;

(f)     Whether Defendants' failure to consider Plaintiff's petition for post-conviction relief for more than two years violated the Due Process Rights of the Plaintiff, the Class and Sub-class pursuant to 42 U.S.C. § 1983; and

(g)     The nature and extent of damages to which Plaintiff and the Classes are entitled.

101.    Class action treatment is superior to any alternative method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expenses that numerous individual actions would engender.

102.    Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## COUNT I – 42 U.S.C. § 1983

## FABRICATION OF EVIDENCE – DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### Plaintiff v. Defendant Dennis

103.    Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

PHDATA 7707417_1

104.    The use of falsified evidence to initiate a criminal prosecution violates a criminal defendant's constitutional right to a fair trial, undermines public confidence in the integrity and impartiality of the criminal justice system, and diminishes the rule of law.  *See Halsey v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014) ("[E]very court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative."); *State v. Gookins*, 637 A.2d 1255, 1260 (N.J. 1994) ("The official conduct which is the predicate of this appeal profoundly shocks the judicial conscience.  It was a brazenly lawless attempt to seek a conviction at the expense of fundamental individual rights." (internal quotations omitted)); *In re Investigation of the W. Va. State Police Crime Lab., Serology Div.*, S.E.2d 501, 508 (W. Va. 1993) ("The matters brought before this Court . . . are shocking and represent egregious violations of the right of a defendant to a fair trial.  They stain our judicial system and mock the ideal of justice under law.").

105.    Defendant Dennis's deliberate fabrication of evidence—including the falsification of numerous Alcotest Calibration certifications, which New Jersey courts require to be admitted into evidence before a BAC result can be used in court to convict a DWI suspect—violated Plaintiff's clearly establish constitutional rights to a fair trial and due process of law under the Fourteenth Amendment of the U.S. Constitution.

106.    As a direct and proximate cause of Defendant Dennis's actions, Plaintiff suffered and continues to suffer monetary, emotional, reputational, and other related harm.

## COUNT II – 42 U.S.C. § 1983

## WITHHOLDING AND SUPPRESSION OF EVIDENCE – DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### Plaintiff v. All Defendants

107.    Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

108.    The failures of Defendants to promptly disclose Defendant Dennis's fabrication of material, exculpatory evidence violated the constitutional rights of Plaintiff, and others situated similarly, as well as various ethical and professional obligations imposed on those entrusted to uphold and enforce the U.S. Constitution.

109.    Defendants acting in concert and conspiracy with each other, deliberately and unreasonably withheld information related to Defendant Dennis's fabrication of evidence from Plaintiff, and others situated similarly, thereby violating their rights to due process of law under the U.S. Constitution.

110.    Deliberate and delayed withholding of this exculpatory evidence violated Plaintiff's clearly established due process rights under the Fourteenth Amendment of the U.S. Constitution.

## COUNT III – 42 U.S.C. § 1983

### Plaintiff v. All Defendants

111.    Plaintiff hereby incorporates the proceeding paragraphs of this Complaint, as set forth above.

112.    A petition for post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus.  It is a meaningful procedure to root out mistakes that caused an unjust result in a verdict and to ensure that a defendant is not unjustly convicted.

PHDATA 7707417_1

113.    New Jersey Court Rule 3:22-2 recognizes the right to post-conviction relief if there was a substantial denial in the conviction proceedings of an individual's rights under the Constitution or the laws of the State of New Jersey.

114.    The New Jersey Supreme Court has already determined that there was a substantial denial of the rights of the Plaintiff and the Class when it opined that a conviction like that of Plaintiff and the Class was based on falsified inadmissible evidence.  The Court directed that Defendants address those convictions which relied on falsified evidence but Defendants have refused to do so.

115.    Plaintiff has attempted to exercise her right to petition for post-conviction relief but the Defendants have refused to address the petition for more than two years, despite the direction from the New Jersey Supreme Court that they do so.

116.    A petition pursuant to New Jersey Court Rule 3:22-3 is the exclusive means of challenging a judgment rendered upon conviction of DWI, a point Defendants argued to the Court in prior litigation brought by Plaintiff, to challenge the Defendant's constitutional violation caused by reliance on falsified evidence to obtain a conviction.  Notwithstanding Defendant's arguments they have refused to address the issues raised in the petitions for post-conviction relief by Plaintiff and the Class.

117.    Defendant's failure to address the petitions for post-conviction relief by Plaintiffs and those similarly situated has resulted in a fundamental injustice to the Plaintiff and the Class. Any requirement that Plaintiff and those similarly situated must first seek post-conviction relief to set aside their conviction should be excused and *Heck* requirements deemed satisfied

118.    Based on these actions, the Defendants have deprived Plaintiff and the Class of their rights secured by the U.S. Constitution, thereby violating 42 U.S.C. § 1983.

## COUNT IV – 42 U.S.C. § 1983

### Plaintiff v. Defendant Callahan

119.    Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

120.    Defendant Callahan has encouraged, tolerated, ratified, and have been deliberately indifferent to the following patterns, practices, and clear need for more or different training, supervision, investigation, or discipline in the areas of:

(a)    The proper exercise of police powers, including, but not limited to, the use of false information to initiate a prosecution, fabrication of evidence, and suppression of exculpatory evidence;

(b)    The proper use of the state-approved methodology for testing evidential breath samples with Alcotest instruments and certifying that those instruments have been properly calibrated;

(c)    Oversight, supervision, and training of ADTU Coordinators, including but not limited to the following:

(i)    The duty to use an NIST-traceable thermometer during the recalibration process;

(ii)    The duty to provide accurate and truthful information to prosecutors related to the Alcotest certification process;

(iii)    The duty to provide only truthful Alcotest calibration and recalibration certifications to the courts in connection with the admission of BAC readings obtained from Alcotest instruments;

(iv)    The duty to refrain from fabricating or falsifying evidence to initiate a criminal prosecution; and

PHDATA 7707417_1

(v)     The duty to refrain from initiating criminal prosecutions based on falsified, forged, fabricated, or otherwise dishonest evidence.

121.   Based on these actions, Defendant Callahan has deprived Plaintiff and the Class of their rights secured by the U.S. Constitution, thereby violating 42 U.S.C. § 1983.

## COUNT V– NEW JERSEY CIVIL RIGHTS ACT, N.J. STAT. ANN. §§ 10:6-1, 10:6-2 FABRICATION OF EVIDENCE

### Plaintiff v. Defendant Dennis

122.   Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

123.   Defendant Dennis's deliberate fabrication and falsification of evidence deprived Plaintiff, and others situated similarly, of substantive rights secured by the New Jersey Constitution, including their rights to a fair trial and due process of law, thereby violating the New Jersey Civil Rights Act.

124.   As a direct and proximate cause of Defendant Dennis's actions, Plaintiff suffered and continues to suffer monetary, emotional, reputational, and other related harm.

## COUNT VI – 42 U.S.C. § 1983

## WITHHOLDING AND SUPPRESSION OF EVIDENCE – NEW JERSEY CIVIL RIGHTS ACT, N.J. STAT. ANN. §§ 10:6-1, 10:6-2

### Plaintiff v. All Defendants

125.   Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

126.   The withholding of information related Defendant Dennis's falsification and fabrication of material, exculpatory evidence by Defendants as well as their failure to promptly disclose Defendant Dennis's malfeasance to Plaintiff and others situated similarly, deprived

PHDATA 7707417_1

Plaintiff and others situated similarly of their rights secured by the New Jersey Constitution, including their rights to a fair trial and due process of law, thereby violating the New Jersey Civil Rights Act.

127.    The failure to allow Plaintiff and others similarly situated to readdress for the constitutional violations under New Jersey Court Rule 3:22 deprived Plaintiff and others similarly situated of their rights secured by the New Jersey Constitution including their rights to a fair trial and due process of law, thereby violating the New Jersey Civil Rights Act.

128.    As a direct and proximate cause of the actions of Defendants, Plaintiff suffered and continues to suffer emotional, reputational, and other related harm.

## JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, pray for the following relief:

(a)    An order certifying a Rule 23(b)(3) Class of individuals who had criminal DWI prosecutions initiated against them in New Jersey, based in part on BAC results obtain from Alcotest instruments that were calibrated, recalibrated, or certified by Defendant Dennis during the period he was employed by the NJSP as an ADTU Coordinator;

(b)    Compensatory damages; reasonable attorney fees and costs; such other relief that may be reasonable, fair, and just;

(c)    Punitive damages against Defendant Dennis;

(d)    A refund of all fines and surcharges the Class paid in connection with their convictions;

PHDATA 7707417_1

(e)     Correction of the Class's Division of Motor Vehicles records to remove evidence of their offenses;

(f)     Correction of the Class's criminal records to remove evidence of their offenses;

(g)     An order requiring the State to undertake a prospective review of all DWI cases potentially involving Detective Dennis to determine whether the convictions should be reversed under the Fourteenth Amendment of the U.S. Constitution and *State v. Gookin*, 637 A.2d 1255, 1260 (N.J. 1994); and

(h)     An order requiring the New Jersey State Police and the Attorney General's Office to put in place a policy mandating the prompt, public disclosure of official investigations into fabrication of evidence to safeguard the due process rights of the accused;

(i)     Any further relief the Court deems appropriate.


Dated:  May 12, 2021                        *s/ Lisa J. Rodriguez*
                                            Lisa J. Rodriguez
                                            SCHNADER HARRISON SEGAL & LEWIS LLP
                                            Woodland Falls Corporate Park
                                            220 Lake Drive East, Suite 200
                                            Cherry Hill, New Jersey 08002
                                            Phone: 856-482-5741  ▪  Fax: 856-482-6980
                                            Email: ljrodriguez@schnader.com

PHDATA 7707417_1